IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

FRANKLIN CARL HODGE,               )
                                   )
            Plaintiff,             )
                                   )
vs.                                )        Case No. CIV-10-1283-D
                                   )
BRANDON KEENE, *et al.*,           )
                                   )
            Defendants.            )

# O R D E R

Before the Court are Defendant Brandon Keene's Qualified Immunity Motion for Summary Judgment [Doc. No. 41] and Defendant City of Norman's Motion for Summary Judgment [Doc. No. 42], filed pursuant to Fed. R. Civ. P. 56.  Keene, a police officer, and the City of Norman, Oklahoma, his employer, seek judgment as a matter of law that they are not liable to Plaintiff Franklin Carl Hodge on his claims for damages under 42 U.S.C. § 1983 and state law, based on allegations he was subjected to excessive force in violation of the Fourth Amendment.  The Motion is fully briefed and at issue.

## Undisputed Facts [1]

Plaintiff was a resident of Norman, Oklahoma, on December 18, 2009, when he was shot by Officer Keene while the two men were running in early morning darkness through a field adjacent to Plaintiff's house.  The relevant events began with a 911 telephone call to the Norman

_____

[1]  This statement includes material facts presented by both parties that are supported as required by Fed. R. Civ. P. 56(c)(1).  Plaintiff presents a statement of facts that is largely unsupported by citations to the record; Officer Keene's statement of facts relies, in part, on allegations in Plaintiff's pleadings, particularly a reply in which Plaintiff responds to the defense of qualified immunity asserted in Officer Keene's Answer. If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide necessary support, the assertion is disregarded.  All facts are stated in the light most favorable to Plaintiff.

Police Department made by Plaintiff at approximately 2:30 a.m.  Plaintiff informed the dispatcher that a suicide was "about to happen" at 329 Orr Drive (Plaintiff's residence), and indicated he wanted "suicide by cop."  *See* Def. Keene's Answer, Ex. 1 [Doc. No. 19-1] (conventionally filed CD), audio recording of 911 Call.  Plaintiff terminated the call after saying, "let's get it on."  *Id.*  A return call by the dispatcher resulted in a telephone conversation with Misty Hodge, Plaintiff's wife, in which Mrs. Hodge stated that Plaintiff was "very drunk," brandishing a knife, upset about wrecking their car "about 30 minutes ago," and "going to have the cops kill him."  *Id.*, audio recording of Return Call.  Mrs. Hodge told the dispatcher that Plaintiff was outside their house, crossing a backyard fence and moving into a field behind the house.  *Id.*  She gave a physical description of Plaintiff, stated he did not have a firearm, and informed police that he was "mentally ill."  *Id.*  Specifically, Mrs. Hodge stated that Plaintiff had "bipolar disorder and PTSD" and was not taking prescribed medications.  *Id.*

Several Norman police officers responded to the dispatcher's request for assistance at 329 Orr Drive.  The officers began searching for Plaintiff, supplied with the information provided by Mrs. Hodge.  The search encompassed the field north of Plaintiff's residence and surrounding areas; a property adjacent to the field contained a bus barn for Norman Public Schools.  During the search, the officers were assisted by a helicopter operated by the Oklahoma City Police Department, known as Air-One, which was equipped with an "FLIR" night vision system.  This system includes a thermal imaging camera that detects heat, and allows a viewer to see black-and-white images of objects that produce heat; it automatically records the visual images, and can record the viewer's

audio responses.  The FLIR video of relevant events is contained in the case record, and its accuracy

is undisputed.  All parties rely on it for summary judgment purposes.

The video shows that the operators of Air-One detected an unidentified heat source near a

tree that was located by a fence separating the field from the bus barn.  Two police officers, Jeremy

Sterling and Joshua Zoller, were near the heat source and moved toward it.  As they approached,

Officer Sterling was able to illuminate a person lying on the ground beneath the tree.  Although the

parties agree that the officers yelled commands to the subject, they disagree about what was said,

and, particularly, whether the officers identified themselves as policemen.  It is undisputed, however,

that the subject stood up and began running in a southeasterly direction, which was away from the

approaching officers and generally toward Plaintiff's house.

Officer Keene heard the radio transmissions between other officers, and believed the

unidentified heat source was Plaintiff.  At the time, Officer Keene was in the backyard of Plaintiff's

residence.  Upon hearing a heat source had been located, Officer Keene climbed over the fence and

into the field, knowing Officers Sterling and Zoller were on the opposite side of the field near the

bus barn.  While climbing the fence, Officer Keene heard that Officer Zoller had spotted a person

lying on the ground.  Responding to a transmission from Officer Zoller, Officer Keene began

running toward the position of Officers Sterling and Zoller.  The area around the tree was

illuminated by light from Air-One, but the area in which Officer Keene was running was not

illuminated.  By Officer Keene's account, Plaintiff suddenly "popped out of no where" and "was

running straight for [Officer Keene]." *See* Keene Aff., Ex. A [Doc. No. 41-2] at 8.[2]  Plaintiff does

not deny running in the direction of Officer Keene, but denies he intended to approach or threaten

Officer Keene; Plaintiff maintains he was merely running toward his house, could not see Officer

Keene in the darkness, and did not know Officer Keene was there.  *See* Hodge Aff., ¶¶ 7-8.

The FLIR video shows that Plaintiff's path took him directly toward Officer Keene.   It

further reflects that Officer Keene took several steps backward but Plaintiff continued to advance,

and that Plaintiff was still advancing immediately before falling to the ground, presumably because

Officer Keene fired his weapon.  Also, consistent with Officer Keene's version of events, Plaintiff

slightly altered his path in what might have appeared to Officer Keene to be an attempt to physically

engage the officer.  Therefore, while Plaintiff attempts to dispute these facts, the Court finds that

Plaintiff's assertions do not create a genuine dispute regarding the events leading up to the shooting.

*See Thomas v. Durastanti*, 607 F.3d 655, 666 (10th Cir. 2010) (a fact clearly shown by a videotape

of the incident cannot be disputed); *see also Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (facts must

be viewed "in the light depicted by the videotape" of the events).

Plaintiff contends a scene diagram generated during the subsequent police investigation

shows he was not approaching Officer Keene when the shots were fired but, instead, had already run

past him.  *See* Pl.'s Resp. Def. Keene's Mot., Ex. 3 [Doc. No. 50-3].  However, the diagram reflects

the location where Plaintiff fell and where Officer Keene was located when the shots were fired,

rather than their positions immediately before Officer Keene discharged his weapon.  The FLIR

---

[2] Officer Keene attests that an interview report generated during the ensuing police investigation reflects a true and accurate account of events.  Plaintiff also relies on this interview report to support facts favorable to him.  Consequently, the Court accepts the report as appropriate for consideration.

video better depicts the sequence of events.  The diagram does reflect a distance between Plaintiff's body and several shell casings that is generally consistent with Officer Keene's estimate of his distance from Plaintiff when the shots were fired.  Officer Keene estimated they were approximately 25 feet apart when he fired his first shot.  Plaintiff does not dispute this estimate but focuses on the fact that he was not brandishing his knife or lunging at Officer Keene from a close distance.  It is undisputed that the officers later determined Plaintiff was unarmed at the time of the shooting; his knife was found in the grass near the tree where they had first spotted him.

By the Complaint, Plaintiff seeks to recover compensatory and punitive damages from Officer Keene under 42 U.S.C. § 1983 for alleged violations of Plaintiff's Fourth Amendment right to be protected from a use of excessive force.[3]  Specifically, Plaintiff claims that Officer Keene used deadly force without justification, resulting in physical and emotional injuries.  Plaintiff also asserts state law claims against Officer Keene of negligence, assault with a dangerous weapon, and battery. As to the City, Plaintiff seeks to impose municipal liability for Officer Keene's actions under § 1983 due to the City's alleged failure to train its police officers, and the existence of a policy or custom of deliberate indifference to its officers' use of deadly force against city residents.  Plaintiff also asserts that the City is liable under state law for Officer Keene's negligent conduct and for its own

---

[3]  Plaintiff initially claimed the Fourth, Fifth, Eighth, and Fourteenth Amendments were violated by Officer Keene's conduct.  In response to a motion for partial dismissal, however, Plaintiff conceded the Fifth and Eighth Amendments do not apply.  In ruling on the motion, the Court determined the Complaint alleged a Fourth Amendment excessive force claim, and dismissed Plaintiff's claim under the Due Process Clause of the Fourteenth Amendment.  *See* Order of May 2, 2011 [Doc. No. 15], at 4.  The dismissal was without prejudice to Plaintiff's right to seek leave to amend if warranted by further factual developments in the case. *See id*. at 4, n.1.  Plaintiff made no such request, but proceeded only under the Fourth Amendment.

negligence with regard to training and supervision of police officers and adopting sufficient law enforcement policies.

By the motions regarding Plaintiff's § 1983 claims, Officer Keene contends summary judgment is proper because 1) no constitutional violation occurred, and 2) he is entitled to qualified immunity from suit; and the City contends summary judgment should be granted because 1) no constitutional violation occurred, and 2) no basis for municipal liability can be established.  As to state law claims, Officer Keene contends his conduct was protected by statute and he is immune from liability; the City contends Officer Keene's conduct was justified and thus protected by statute, and that its alleged negligence with regard to adopting and enforcing adequate policies is exempt from liability under the Governmental Tort Claims Act, Okla. Stat. tit. 51, § 151 *et seq*.

### Standard of Decision

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party.  *Id*. at 255.  All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party.  *Id*.  If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3); *see also Adler*, 144 F.3d at 672. The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Discussion

### A.   Civil Rights Claims Under § 1983

To establish a § 1983 claim against an individual defendant asserting the defense of qualified immunity, Plaintiff must show facts that "make out a violation of a constitutional right" and demonstrate that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). The alleged deprivation in this case is the violation of a citizen's right under the Fourth Amendment not to be unreasonably seized through the use of excessive or deadly force.

To establish a § 1983 claim against a municipality, Plaintiff must establish both that a constitutional violation occurred and that an unconstitutional policy or municipal act caused the violation.   In this case, the City's allegedly unconstitutional policy or conduct was inadequate training of police officers regarding confrontations involving mentally ill citizens.  If an inadequate training program is established, "§ 1983 provides for the imposition of liability where there exists an 'affirmative' or 'direct causal' link between a municipal person's adoption or implementation of a policy and a deprivation of federally protected rights." *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 2150 (2011).

### 1.        Individual Liability Under § 1983

A Fourth Amendment claim of excessive force is governed by an "objective reasonableness" standard.  *See Scott v. Harris*, 550 U.S. 372, 381 (2007); *see also Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010); *Cordova v. Aragon*, 569 F.3d 1183, 1188 (10th Cir. 2009).   When governed by the Fourth Amendment, even a use of deadly force is analyzed under this standard.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989).  According to the Supreme Court,

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id*. at 396 (quotations omitted).  The reasonableness inquiry is an objective one, taking into account the facts and circumstances confronting the police officers at the moment:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . .   The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Id*. at 396-97.

"The use of deadly force is not unlawful if a reasonable officer would have had probable cause to believe that there was a threat of serious physical harm to himself or others." *Thomas v. Durastanti*, 607 F.3d 655, 664 (10th Cir. 2010); *see also Thomson v. Salt Lake County*, 584 F.3d 1304, 1313 (10th Cir. 2009); *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008).   In circumstances like those presented in this case, where law enforcement officers encounter suicidal or mentally ill persons who are not suspected of a crime, federal courts have considered "a number of non-exclusive factors.   These include (1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." *Estate of Larsen*, 511 F.3d at 1260; *see also Thomson*, 584 F.3d at 1314.   An important aspect of the inquiry "is 'whether the officers were in danger at the precise moment that they used force.'" *Thomson*, 584 F.3d at 1315 (quoting *Phillips v. James*, 422 F.3d 1075, 1083 (10th Cir. 2005)).   Although "the precise moment of the shot is a critical factor, . . . the tense, uncertain, and rapidly evolving events leading up to that moment [are] extremely relevant in the totality of the circumstances approach." *Id*. at 1318 (internal quotations omitted).

Applying these standards in this case, Plaintiff must establish that Officer Keene's use of deadly force was not objectively reasonable under the circumstances facing Officer Keene at the time of the shooting.   Plaintiff argues that consideration of the record viewed in the light most favorable to him, as required by Rule 56, compels a conclusion that genuine disputes of material facts preclude summary judgment.   Plaintiff contends reasonable minds could differ concerning: 1) whether Officer Keene's use of deadly force was objectively reasonable; and 2) whether Officer Keene created a need to use deadly force.   The first contention is argued from Plaintiff's perspective, that is, an allegedly unprovoked shooting of an unarmed man who was not a criminal suspect while he was running alone through a field, attempting to evade individuals who had confronted him without identifying themselves as police officers.   Plaintiff's argument regarding the second issue is based on cases, such as *Allen v. City of Muskogee*, 119 F.3d 837 (10th Cir. 1997), involving uses of deadly force by police officers confronting suicidal or mentally ill individuals, in which the court of appeals has considered not only "whether [the officers] believed they were in danger at the time but also whether their 'own reckless or deliberate conduct during the seizure unreasonably created the need to use such force.'"   *See Thomson*, 584 F.3d at 1320 (quoting *Allen*, 119 F.3d at 840).

In considering the first question, the Court is constrained by the undisputed facts and "plaintiff's version of the facts, insofar as it is supported by the record."   *See Thomson*, 584 F.3d at 1318; see also *Scott*, 550 U.S. at 380.   In this case, the undisputed facts are that Officer Keene was informed that police officers were looking for a mentally ill, drunken man armed with a knife, with an expressed desire for "suicide by cop."   Officer Keene was running in darkness through a field in which he believed the man had been sighted, responding to a call for assistance by other officers.

10

The time frame during which the critical events transpired was very short, as shown by the FLIR video. Unknown to Plaintiff and Officer Keene, they were running towards each other, until Officer Keene suddenly saw Plaintiff "pop" into view from the darkness. Officer Keene perceived an immediate threat and responded in a manner designed to protect himself from what he reasonably believed to be a drunken, mentally ill individual approaching him with a knife at a running pace. The facts argued by Plaintiff – that he was actually unarmed and trying to return to his house – were not known to Officer Keene. Further, other alternatives argued by Plaintiff as reasonable responses, such as issuing verbal commands, lack factual support in the record; nothing suggests that Officer Keene had other means to avert the threat under the rapidly evolving circumstances presented.[4]

Turning to the second issue of whether Officer Keene by his own conduct unreasonably created the need to use deadly force, the Court agrees with Plaintiff that this issue is appropriate for consideration under the totality of circumstances approach of the Fourth Amendment. *See Thomas*, 607 F.3d at 667; *Thomson*, 548 F.3d at 1320; *see also Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001). The Tenth Circuit has made clear, however, that in order to considered unreasonable conduct contributing to an excessive use of force, "the conduct arguably creating the need for force must be immediately connected to the seizure and must rise to the level of recklessness, rather than negligence." *See Medina*, 252 F.3d at 1132; *see also Thomson*, 584 F.3d at 1320.

---

[4] When asked during the subsequent investigation whether he made any commands, Officer Keene stated that "he 'didn't have time.'" *See* Keene Aff., Ex. A [Doc. No. 41-2] at 8. Officer Keene also stated that "the only flashlight he had was the one on his gun," that he was running with "his gun 'out' but not 'pointed'," and that "it was only after he first observed the subject running towards him that he 'pointed' the weapon at the subject and activated the light." *See id*. at 9. In his factual statement, Plaintiff also notes that the audio response by the OCPD officer viewing the FLIR images assumed that the suspect had been "tased," but Plaintiff admits that the basis for this assumption is unknown. Nothing in the record suggests Officer Keene had access to a taser device or any defensive weapon other than his firearm.

To demonstrate reckless conduct by Officer Keene, Plaintiff relies on some of the same facts argued with regard to the first issue – that the police officers acted unreasonably in pursuing a suicidal person who was not a criminal suspect and posed no threat of harm.  *See* Pl.'s Resp. Def. Keene's Mot. [Doc. No. 50] at 16-18.  With respect to Officer Keene, however, Plaintiff relies only on "Officer Keene's conduct of climbing the fence and running towards [Plaintiff] in a dark area without making any verbal commands."  *See id.* at 14-15, 17.  In light of the undisputed fact that Officer Keene was responding to another officer and running toward the tree illuminated by the helicopter's spotlight, without knowing that Plaintiff was running directly at him in the dark field, the Court finds that Plaintiff has failed to identify any conduct by Officer Keene immediately connected to the shooting that could be characterized as reckless.

In summary, although Plaintiff correctly argues that Rule 56 requires all reasonable inferences to be drawn in his favor, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *See Scott*, 550 U.S. at 380. Further, to support summary judgment, Rule 56 requires "that there be no *genuine* issue of *material* fact."  *Id.* (internal quotation omitted; emphasis supplied in *Scott*).  "Once the relevant facts are determined with all reasonable inferences drawn in favor of the non-moving party at the summary judgment stage, 'whether [the suspect's] actions have risen to the level warranting deadly force . . . is a pure question of law.'"  *Cordova v. Aragon*, 569 F.3d 1183, 1183, 1188 (10th Cir. 2009) (quoting *Scott*, 550 U.S. at 381 n.8, in which the Supreme Court emphasized that inferences were to be drawn "in favor of the non-moving party *to the extent supportable by the record*" (emphasis in original)); *see also Medina*, 252 F.3d at 1131 ("Whether the officers acted reasonably, however, is a *legal*

determination in the absence of disputed material facts.") (emphasis in original).  In *Scott*, the Supreme Court considered the videotape of a high-speed car chase, and had "little difficulty in concluding it was reasonable" for a police officer to end the chase by ramming the bumper of his car into the suspect's vehicle.  *Scott*, 550 U.S. at 384.  Similarly, in this case, viewing the FLIR video and considering the undisputed facts, the Court concludes it was reasonable for Officer Keene to discharge his firearm at Plaintiff under the circumstances immediately confronting him.[5]

For these reasons, the Court finds that Plaintiff has failed to demonstrate that Officer Keene violated Plaintiff's Fourth Amendment rights by the excessive use of force and, therefore, that Plaintiff has failed to overcome Officer Keene's qualified immunity defense.  Thus, Officer Keene is entitled to summary judgment on Plaintiff's § 1983 claim.

### 2.    Municipal Liability Under § 1983

As stated above, Plaintiff seeks to impose § 1983 liability on the City for the conduct of its police officers toward him based on "inadequate or lack of training regarding the approach of suicidal persons."  *See* Pl.'s Resp. Def. City's Mot. [Doc. No. 52] at 10.  It is well established, however, that "even if it could be said that [the City's] policies, training, and supervision were unconstitutional, the City cannot be held liable where, as here, the officers did not commit a constitutional violation."  *See Trigalet v. City of Tulsa*, 239 F.3d 1150, 1155-56 (10th Cir. 2001); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Myers v. Oklahoma County Bd.*

---

[5]  In the light of 20/20 hindsight, and with the benefit of cool reflection, the events of the night in question, including the ultimate result of the shooting of Plaintiff and his injuries, were a series of unfortunate occurrences that created a "perfect storm" of circumstances ripe with the potential to end badly.  But, as stated, the legal standard to be applied to the facts here does not allow the Court to view the events from a safe distance and engage in second-guessing regarding the conduct of the officer at the scene, nor should it.

*of County Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing "the *Heller* rule" as well

established).  Because Plaintiff has failed to establish a constitutional violation, the City cannot be

held liable under § 1983 for the injuries Officer Keene inflicted on Plaintiff.  Therefore, the City is

also entitled to summary judgment on Plaintiff's § 1983 claim.

**B.      State Tort Claims**

     **1.      Individual Liability**

     Plaintiff alleges in his Complaint, and does not dispute in his summary judgment response,

that Officer Keene's allegedly tortious actions were committed while he was acting within the scope

of his employment as a Norman police officer.  *See* Compl. [Doc. No. 1], ¶ 25; Pl.'s Resp. Def.

Keene's Mot. [Doc. No. 50] at 10 ("Defendant Keene's LCvR56.1 Statement numbers 15 and 16

are not disputed.").  Accordingly, Officer Keene is immune from tort liability by operation of the

Governmental Tort Claims Act, which provides for exclusive liability of a political subdivision for

the torts of its officers or employees acting within the scope of their office or employment.  *See*

Okla. Stat. tit. 51, § 153; *see also Shephard v. CompSource Oklahoma*, 209 P.3d 288, 294 (Okla.

2009).  The Act expressly provides that all public employees acting within the scope of employment

"shall be immune from liability for torts."  *See* Okla. Stat. tit. 51, § 152.1; *see also id*. § 163(C) ("In

no instance shall an employee of the state or political subdivision acting within the scope of his

employment be named as defendant . . . .").  Thus, Plaintiff cannot sue Officer Keene for any tort

he may have committed while performing his duties as a police officer.

2. **Municipal Liability**

The Complaint alleges both that the City is liable for the negligence of Officer Keene and that the City is liable for its own negligence in failing to train police officers, failing to enforce state laws and departmental regulations regarding the proper use of force by police officers, failing to discipline officers who have used excessive force, adopting a policy permitting such constitutional violations to occur, or failing to establish an adequate system or policy to prevent such violations.

a. **Officer Keene's Conduct**

Regarding the alleged negligence of Officer Keene, the City invokes a statutory defense to criminal liability that protects police officers who use deadly force in the performance of their duties if the officer "reasonably believes the use of force is necessary to protect himself or others from the infliction of serious bodily harm." *See* Okla. Stat. tit. 21, § 732(3).  In response, Plaintiff argues that the reasonableness of Officer Keene's conduct presents a question of fact and, thus, summary judgment is inappropriate.

The Court is bound in its application of state law by decisions of the Oklahoma Supreme Court. *See Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002).  To the extent the City relies on a state criminal statute defining justifiable homicide to immunize Officer Keene from civil tort liability, the Court is guided by the Oklahoma Supreme Court's holding that a similar criminal statute defining self defense provides police officers with a privilege, "sometimes conceptualized as providing a qualified immunity," that constitutes a defense to liability rather than an immunity from suit. *See Morales v. City of Oklahoma City*, 230 P.3d 869, 877-78 (Okla. 2010).  The supreme

court further determined in *Morales* the standard of care applicable to a police officer in a civil suit

by an arrestee:

> A police officer's duty [of care] . . . is to use only such force in making an arrest as a reasonably prudent police officer would use in light of the objective circumstances confronting the officer at the time of the arrest.  In applying this standard, an officer's subjective mistake of fact is irrelevant, including whether he (she) is acting in good faith or bad.  The question is whether the objective facts support the degree of force employed.
>
> Among the factors that may be considered in evaluating the objective reasonableness of an officer's use of force in making an arrest are: (1) the severity of the crime of which the arrestee is suspected; (2) whether the suspect poses an immediate threat to the safety of the officers or others, (3) whether the suspect is actively resisting arrest or attempting to evade arrest; (4) the known character of the arrestee; (5) the existence of alternative methods of accomplishing the arrest; (6) the physical size, strength and weaponry of the officers compared to those of the suspect; and (7) the exigency of the moment.

*Id*. at 880 (footnotes omitted).  The court expressly noted that the "objective reasonableness test"

established by its pronouncement "is like that employed by the United States Supreme Court in

§ 1983 civil rights claims of excessive force," although "the ultimate inquiries differ," and the court

explained that the list of possible considerations was not exhaustive but intended to embody "a

totality-of-circumstances" approach.  *See id*. n.47-n.48.

In *Morales*, the Oklahoma Supreme Court rejected the municipality's argument that "the

objective reasonableness standard applicable to police use of force creates a fixed standard of care

that may be applied by the court without a jury." *Id*. at 880-81.  The court also rejected an argument

that summary judgment was appropriate in that case because the evidence permitted only one

reasonable conclusion regarding the police officer's negligence.  The case involved a school security

officer's use of force against a middle school student fighting with another student.  The 275-pound

officer attempting to stop the fight allegedly used all of his weight to hold a 110-pound female student against a wall in a manner that squeezed her left hand and broke her wrist.  The court observed that the record did not address proper restraint and arrest techniques or available alternatives to subdue the student.  *See id*. at 881-82.  On the record presented, the court concluded that "triable issues are present and preclude summary judgment."  *Id*. at 881.

In this case, the relevant facts are undisputed, and the objective reasonableness of Officer Keene's reaction to the circumstances confronting him has been determined in the context of the Court's ruling on Plaintiff's § 1983 claim against him.  Under these circumstances, the Court finds that the summary judgment record permits only one reasonable conclusion, which is, that Officer Keene acted reasonably by using his firearm to defend himself from an immediate risk of serious physical harm.

Further, Plaintiff correctly observes that this case does not involve a police officer's conduct in arresting a criminal suspect.  Unlike *Morales*, Officer Keene was responding to an emergency call from a suicidal and drunken individual, and assisting other officers in attempting to prevent harm to Plaintiff or others.  Accordingly, Plaintiff's claim based on Officer Keene's conduct seeks to impose liability on the City for the manner in which Officer Keene provided protective services. The Act provides a statutory exemption for a loss or claim that results from "the method of providing, police, law enforcement or fire protection."  Okla. Stat. tit. 51, § 155(6).  The state supreme court has held that "protection" is the operative word and thus "a governmental subdivision is not liable for deficiency of protective services extended by its police, law enforcement or fire fighting components."  *Salazar v. City of Oklahoma City*, 976 P.2d 1056, 1066 (Okla. 1999); *see*

*Schmidt v. Grady County*, 943 P.2d 595, 598 (Okla. 1997) (holding that § 155(6) applies to acts of employees engaged "in taking into protective custody and transporting a person" to jail).[6]

Like the officer in *Schmidt*, Officer Keene was not dealing "with an arrestee but with a person in need of protection from harming [him]self or others." *See Salazar*, 976 P.2d at 1067. Under circumstances where a law enforcement officer has allegedly used excessive force while attempting to take custody of an armed, suicidal individual, the Tenth Circuit has held that § 155(6) immunizes the political subdivision from liability. *See Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1321 (10th Cir. 1998); *see also Samuel v. City of Broken Arrow*, Case No. 11-5166, 2012 WL 6634590, *4 (10th Cir. Dec. 21, 2012) (police officers responding to a domestic violence call were carrying out a police protection function and immunity applied).[7] Therefore, the City is exempt from liability for Officer Keene's conduct in the provision of protective services.

For these reasons, the City is entitled to summary judgment on Plaintiff's tort claim against it based on Officer Keene's alleged torts.

### b.    Municipal Conduct

Regarding alleged deficiencies in the City's police training practices and departmental policies, the City invokes a statutory exemption from liability under § 155(4), which provides that a political subdivision shall not be liable for a loss or claim that results from:  "Adoption or

---

[6]  In rejecting the applicability of § 155(6) in *Morales*, the court noted that *Salazar* expressly distinguished the negligent performance of a law enforcement functions from a "deficiency in providing protective services." *See Morales*, 230 P.3d at 876.

[7]  Unpublished opinion cited pursuant to Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1.

enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy." Okla. Stat. tit. 51, § 155(4).  In response, Plaintiff asserts that the Oklahoma Supreme Court has expressly rejected the position that this provision authorizes "a blanket immunity to a municipality for claims arising from law enforcement."  *See Morales*, 230 P.3d at 875.

Unlike *Morales*, however, Plaintiff's claim that the City failed to adopt or enforce adequate police policies is not simply a claim arising from law enforcement.  The Oklahoma Supreme Court has expressly held that "[t]he State and its political subdivisions enjoy immunity for the choice to adopt or enforce a law, the formulation of law enforcement policy, and the method by which policy is implemented."  *See State ex rel. Oklahoma Dep't of Public Safety v. Gurich*, 238 P.3d 1, 4 (Okla. 2010).  In that case, the supreme court rejected the argument that immunity should apply to the actions of individual officers engaged in a police pursuit of a fleeing driver, which constituted an implementation of law enforcement policy, but the court acknowledged that the government retains immunity for agency-level policy or planning decisions.  *See id.* at 3-4.  In this case, to the extent Plaintiff claims his injuries were caused by the City's allegedly deficient or unconstitutional policies, Plaintiff's tort claim against the City falls within the exemption of § 155(4), and the claim is barred by its sovereign immunity from liability.  *See* Okla. Stat. tit. 51, § 152.1 (adopting sovereign immunity and waiving immunity only to the extent provided by the Act).  Therefore, the City is entitled to summary judgment on Plaintiff's tort claim based on the City's own negligence.

**Conclusion**

For the reasons stated above, Defendants are entitled to summary judgment on all claims asserted by Plaintiff.

IT IS THEREFORE ORDERED that Defendant Brandon Keene's Qualified Immunity Motion for Summary Judgment [Doc. No. 41] and Defendant City of Norman's Motion for Summary Judgment [Doc. No. 42] are GRANTED.  Judgment shall be entered accordingly.

IT IS SO ORDERED this 30th day of January, 2013.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE